UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL ACTION NO. C-07-627-2 |
| | § | |
| ELMO BAILEY | § | |

**ORDER**

On April 10, 2009, came on for hearing Defendant Elmo Bailey's Opposed Motion to Suppress. (D.E. 36). For the reasons discussed below, Defendant's motion is hereby DENIED.

**I.     Jurisdiction.**

The Court has federal subject matter jurisdiction over this case pursuant to 18 U.S.C. § 3231, as Defendant is charged with violations of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 18 U.S.C. § 2.

**II.    Factual and Procedural Background.**

On February 14, 2007, Defendants Glenn Lee and Elmo Bailey were arrested at the Border Patrol checkpoint in Falfurrias, Texas. (4/13/09 Hearing Tr. at 2:37:05.) They were ultimately charged in a one-count indictment with possessing with the intent to distribute 511 kilograms of marihuana in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). (D.E. 4.) On April 4, 2009, Defendant Bailey filed a motion to suppress certain of his post-arrest statements. (D.E. 36.) Defendant Bailey argued that his statements are inadmissible because (1) they were involuntary, and (2) they were obtained during a period of detention that violated Federal Rule of Criminal Procedure 5(a)(1)(A). (Id.) That same day, the Government filed a response in opposition to Defendant's motion. (D.E. 37.)

On April 10, 2009, the Court held a hearing on Defendant's motion. Border Patrol Agent Victor Baroso Jr. testified that, on February 14, 2007, at approximately 2:00 PM, Defendants Bailey and Lee arrived at the Border Patrol checkpoint in Falfurrias, Texas, driving a tractor-trailer; Defendant Lee was driving the tractor trailer and Defendant Bailey was in the passenger seat. (4/13/09 Hearing Tr. at 2:33:50.) Agent Baroso asked Defendant Lee if he would consent to a search of the tractor-trailer in the secondary inspection area and Defendant Lee said, "yes." (Id. at 2:35:40.) At the secondary inspection area, a second Border Patrol Agent asked Defendant Lee if he would consent to the removal of a seal from the rear of the tractor-trailer to permit inspection and Mr. Lee again said, "yes." (Id. at 2:36:00.) The Border Patrol Agents cut the seal and allowed a service canine to enter the rear of the tractor-trailer. (Id. at 2:36:30.) The service canine alerted and, upon searching the vehicle, the Border Patrol Agents found marihuana. (Id. at 2:36:50.)

Once the drugs were discovered, at approximately 2:30 PM, the Border Patrol Agents placed Defendants Bailey and Lee under arrest. (Id. at 2:37:05.) The Border Patrol Agents then took the Defendants inside the Border Patrol station, separated them, and read them their Miranda rights. (Id. at 2:37:30.) Both Defendants waived their Miranda rights; neither requested an attorney or invoked his right to remain silent. (Id. at 2:37:45.) Agent Baroso interviewed Defendant Lee first and he confessed to transporting the marihuana. (Id. at 2:38:20.) Agent Baroso then interviewed Defendant Bailey; Defendant Bailey denied knowledge of the marihuana. (Id. at 2:38:35.)

Agent Baroso called the Drug Enforcement Agency ("DEA") in Corpus Christi, Texas, at some time between 3:30 and 4:30 PM. (Id. at 2:40:55, 2:44:40.) DEA Special Agent Paul Stewart was assigned as the primary agent responsible for Defendant Lee's and Defendants

Bailey's cases. (Id. at 2:56:40.) Special Agent Stewart testified that a number of things generally have to happen between the time the DEA receives the call from Border Patrol and the time the DEA agents leave for the Border Patrol checkpoint. (Id.) The process starts when Border Patrol contacts the DEA. (Id.) The DEA agent assigned to the case then waits for Border Patrol to fax over the I-44, *i.e.*, the Border Patrol report containing information regarding the case, including the names of the Defendants and a summary of was has transpired, and runs the data contained therein through other databases to determine whether there is any overlap with other pending cases. (Id. at 2:57:00.) The DEA agent also runs the criminal history of the persons detained, compiles the necessary paperwork, *i.e.*, the Miranda warnings, personal history statements, etc., notifies his backup and waits for his backup to arrive, and goes off-site to obtain the DEA truck used to transport seized narcotics. (Id. at 2:57:15.) This process takes between one and two hours. (Id. at 2:57:45, 2:58:05.) In addition, the Falfurrias checkpoint is located approximately 100 miles away from the DEA office in Corpus Christi, Texas, and it generally takes DEA agents around one and a half hours to drive there. (Id. at 2:59:00.)

On February 14, 2007, Special Agents Paul Stewart and David Bishop arrived at the Falfurrias checkpoint at approximately 8:00 PM. (Id. at 2:58:20.) Special Agent Stewart testified that his standard procedure, upon arriving at the checkpoint, is to divide the work between himself and his backup such that one of them goes inside the Border Patrol station and signs off on Border Patrol's I-44, the marihuana, and the Defendants' personal property, fingerprints and photographs the Defendants if necessary, etc., while the other remains outside and inspects and photographs the tractor-trailer. (Id. at 3:00:20.) This procedure generally takes approximately 45 minutes to an hour. (Id. at 3:03:00.) Once the inspection and paperwork are completed, the DEA agents load the seized narcotics into the DEA truck and secure the truck.

(Id. at 2:03:40.) In this case, there were 1100 pounds of marihuana; Special Agent Stewart was unable to recall how long it took to load that amount of marihuana into the truck. (Id. at 3:04:40.)

Once the marihuana was loaded into the truck, Special Agent Stewart began the Defendants' separate interviews. (Id. at 2:05:30.) Both agents were present during the Defendants' interviews. (Id. at 3:07:45.) Special Agent Stewart read Defendant Lee his Miranda rights and began his interview at around 9:00 PM. (Id. at 3:06:50, 3:07:30.) Defendant Lee again waived his Miranda rights. (Id.) Special Agent Stewart estimated that he spent approximately one hour interviewing Defendant Lee, during which time Defendant Lee confessed to transporting the marihuana. (Id. at 3:07:35, 3:08:50.) At the end of the interview, Border Patrol agents informed the DEA agents that they had seized another load of marihuana at the checkpoint. (Id. at 3:09:15.) The DEA agents spent approximately one and a half hours dealing with the new case. (Id. at 3:09:40.)

Special Agent Stewart then commenced interviewing Defendant Bailey; Special Agent Stewart read Defendant Bailey his Miranda rights at around 12:05 AM the morning of February 15, 2007. (Id. at 3:11:05.) Defendant Bailey waived his Miranda rights; he neither requested an attorney nor invoked his right to remain silent. (Id.) Special Agent Stewart informed Defendant Bailey that Defendant Lee had already confessed and had implicated Defendant Bailey, at which point Defendant Bailey confessed as well. (Id. at 3:12:15.) Defendant Bailey's interview lasted for approximately thirty to forty minutes and was not recorded. (Id. at 3:32:30, 3:31:30.) At no point during the interview did Defendant Bailey complain that he was hungry, tired, thirsty, or uncomfortable in any way. (Id. at 3:12:50.)

The DEA agents then transported the Defendants to the Brooks County Detention Center, which is located approximately 20 minutes away from the Falfurrias Border Patrol checkpoint. (Id. at 3:14:00.)  Special Agent Stewart testified that persons arrested at the checkpoint are transported to Brooks County if Brooks County is able to transport them to Corpus for presentment to the magistrate judge the following day; if not, they are transported to a detention facility in Aransas County, which is substantially farther away. (Id. at 3:14:45.) The Defendants arrived at the Brooks County at around 2:00 AM. (Id. at 3:18:00.)  The magistrate judges in Corpus Christi, Texas, schedule initial appearances at 2:00 PM each day; accordingly, the Defendants were taken before a magistrate judge at 2:00 PM on February 15, 2007. (Id. at 3:18:15.)

At some point subsequent to the Defendants' arrest, the DEA agents discovered that the Defendants had a connection with a case pending in North Carolina. (Id. at 3:23:25.)  On February 20, 2007, the government dismissed the charges against the Defendants in return for the Defendants acting as confidential informants in the North Carolina case. (Id. at 3:24:00.) Special Agent Stewart testified that this arrangement was not discussed during the Defendants' initial interviews at the Border Patrol checkpoint; he stated that "that came at a later time." (Id. at 3:35:00.)  For reasons not discussed at the April 10, 2009 hearing, the charges against Defendants were later reinstated. (D.E. 4.)

### III. Discussion.

#### A. Defendant Bailey's Confession was Voluntary.

Defendant Bailey argues that his confession should be suppressed because it was not voluntary. (D.E. 36 at 6.)  Specifically, Defendant argues that "the circumstances of the confession being taken and the decision of the government to dismiss the case give good cause to

question the voluntariness of the confession …. The defense submits that the defendant's statement was made in relation to the government's decision not to prosecute the case and was therefore involuntary." (Id.)

As discussed above, the government dismissed the charges against the Defendants in return for their agreeing to act as confidential informants in a separate case pending in North Carolina. See supra section II. The DEA agents, however, did not even raise this particular opportunity to cooperate with Defendants until *after* both Defendants had confessed and appeared before the magistrate judge. Id. "A confession is voluntary if it is the product of the defendant's free and rational choice; it is voluntary in the absence of official overreaching, either by direct coercion or subtle psychological persuasion." United States v. Mullin, 178 F.3d 334, 341 (5th Cir. 1999) (citing United States v. Restrepo, 994 F.2d 173, 183 (5th Cir. 1993)). "Whether a confession is voluntary is determined by considering the 'totality of the circumstances.'" Id. "The reviewing court must assess the characteristics of the defendant and the details of the interrogation, such as the youth of the defendant, his level of education, his level of intelligence, the lack of any advice to the defendant of his constitutional rights, the length of detention, the repeated and prolonged nature of the questioning, and the use of physical punishment, such as the deprivation of food or sleep." Morales v. Dretke, No. 3:03-CV-1905-N, 2005 U.S. Dist. LEXIS 6202, at *15 (N.D. Tex. Apr. 11, 2005) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973)).

Because Defendant Bailey was not aware of the opportunity to cooperate as a confidential informant at the time he gave his confession, that opportunity cannot be said to have coerced or persuaded him in any way. Furthermore, while the length of Defendant's detention is a factor that the Court may consider in assessing whether his confession was voluntary, see

Morales, 2005 U.S. Dist. LEXIS 6202, at *15, the Court must make its final decision based on the totality of the circumstances, see Mullin, 178 F.3d at 341.  Special Agent Stewart testified, and Defendant did not contest, that Defendant was fully advised of his constitutional rights before he confessed and that he did not, at any time during his detention, complain that he was hungry, tired, thirsty, or uncomfortable in any way.  See supra section II.  In addition, the DEA agents did not subject Defendant to prolonged questioning; rather, he spent the majority of his detention waiting for the DEA agents to accomplish other tasks associated with his arrest.  Id.  Having considered the circumstances surrounding Defendant Bailey's confession, the Court finds that it was voluntary.  Accordingly, Defendant Bailey's motion to suppress of the basis of involuntariness is DENIED.

### B. The Delay Between the Time Defendant Bailey was Arrested and the Time Defendant Bailey was Presented to a Magistrate Judge Was Reasonable.

Defendant Bailey also argues that his confession should be suppressed because it was made during a period of detention that violated the prompt presentment requirement of Federal Rule of Criminal Procedure 5(a)(1)(A).  (D.E. 36 at 3.)  Rule 5(a)(1)(A) states that "[a] person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge …."  The Supreme Court held in McNabb v. United States, 318 U.S. 332 (1943) and Mallory v. United States, 354 U.S. 449 (1957) ("McNabb-Mallory") that "'confessions made during periods of detention that violat[e] the prompt presentment requirement of Rule 5(a)" are "'generally … inadmissible.'"  Corley v. United States, No. 07-10441, 2009 U.S. LEXIS 2512, at *12 (U.S. Apr. 6, 2009) (quoting United States v. Alvarez-Sanchez, 511 U.S. 350, 354 (1994)).

In response to McNabb-Mallory, Congress enacted 18 U.S.C. § 3501, which states in relevant part:

> (a) In any criminal prosecution brought by the United States or by the District of Columbia, a confession … shall be admissible in evidence if it is voluntarily given ….
>
> (c) In any criminal prosecution by the United States or by the District of Columbia, a confession made or given by a person who is a defendant therein, while such person was under arrest … shall not be inadmissible solely because of delay in bringing such person before a magistrate judge … if such confession is found by the trial judge to have been made voluntarily and if the weight to be given the confession is left to the jury and if such confession was made or given by such person within six hours immediately following his arrest …. [T]he time limitation contained in this subsection shall not apply in any case in which the delay in bringing such person before such magistrate judge … beyond such six-hour period is found by the trial judge to be reasonable considering the means of transportation and the distance to be traveled to the nearest available … magistrate judge …..

The Supreme Court recently interpreted 18 U.S.C. § 3501 in Corley v. United States, stating:

> [Section] 3501 modified McNabb-Mallory without supplanting it. Under the rule as revised by § 3501(c), a district court with a suppression claim must find whether the defendant confessed within six hours of arrest (unless a longer delay was "reasonable considering the means of transportation and the distance to be traveled to the nearest available [magistrate]"). If the confession came within that period, it is admissible, subject to the other Rules of Evidence, so long as it was "made voluntarily and … the weight to be given [it] is left to the jury." Ibid. If the confession occurred before presentment and beyond six hours, however, the court must decide whether delaying that long was unreasonable or unnecessary under the McNabb-Mallory cases, and if it was, the confession is to be suppressed.

Id., 2009 U.S. LEXIS 2512, at *35.

Defendant Bailey confessed approximately nine and a half hours after his arrest and before he was presented to a magistrate judge. See supra section II. Under the circumstances of this case, however, the delay was "reasonable considering the means of transportation and the distance to be traveled to the nearest available … magistrate judge." 18 U.S.C. § 3501 (c). The Falfurrias Border Patrol checkpoint falls within the Corpus Christi Division of the Southern District of Texas and, thus, the nearest magistrate judge is located in Corpus Christi, Texas.

Even if the DEA agents had driven directly to the Falfurrias checkpoint, picked up the Defendants, and returned immediately to Corpus Christi, Texas, the time between the Defendants' arrest and their presentment to the magistrate judge would still have been at least four hours, assuming that a magistrate was available upon their return. See supra section II. Furthermore, the other tasks the DEA agents were required to accomplish before they traveled to the Falfurrias check point and while they were there added several hours to this timeline. Id. The DEA agents had to compile all of the necessary paperwork, take all of the steps necessary to preserve the evidentiary chain of custody, load all of the seized narcotics into the DEA truck, etc., and then, because the magistrate judge was not available when all of those tasks were complete, wait until the following day to present the Defendants to the magistrate judge. Id. Under the circumstances of this particular case, the delay between the time Defendant Bailey was arrested and the time he was presented to a magistrate judge was reasonable; accordingly, Defendant Bailey's motion to suppress of the basis of unnecessary pre-presentment delay is DENIED.

Furthermore, the purpose behind McNabb-Mallory is to prevent "federal agents [from] question[ing] suspects for extended periods before bringing them out in the open …" Corley, 2009 U.S. LEXIS 2512, at *32. This type of abuse did not occur in this case. The interview that elicited Defendant Bailey's confession lasted approximately thirty to forty minutes, before and after which he was left alone. See supra section II. The DEA agents spent the remaining time at the checkpoint performing tasks necessary to effectuate the arrest, *e.g.*, photographing the evidence, loading the narcotics into the DEA truck, etc. Id. At no time was Defendant Bailey subjected to a lengthy period of interrogation.

## IV.	Conclusion.

Based on the forgoing, Defendant Bailey's motion to suppress is hereby DENIED.

SIGNED and ORDERED this 22nd day of April, 2009.

_____
Janis Graham Jack
United States District Judge